UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAVON WILLIAMS,<br><br>                    Plaintiff,<br><br>        v.<br><br>CITY OF TACOMA et al,<br><br>                    Defendant. | CASE No. 3:24-cv-05056-DGE<br><br>ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 69) |

## I        INTRODUCTION

Before the Court are Plaintiff's objections (Dkt. No. 69) to the Report and

Recommendation ("R&R") (Dkt. No. 68) of United States Magistrate Judge Michelle L.

Peterson, which recommends granting Defendants' motion for summary judgment.[1]  (Dkt. No.

50.)  Plaintiff opposed the motion.  (Dkt. No. 54.)  Defendants' reply in support of their motion

---

[1] Plaintiff requests oral argument on his objections.  (Dkt. No. 69 at 1.)  Pursuant to Local Civil Rule 7(b)(4), the Court concludes oral argument is unnecessary for resolution of the summary judgment motion.

1    for summary judgment included a motion to strike.[2] (Dkt. No. 62.)  For the reasons that follow,

2    the Court ADOPTS the R&R in full and STRIKES Plaintiff's expert report.

3                                    **II      BACKGROUND**

4            The Court refers to the R&R for a more comprehensive recitation of the facts.  (Dkt. No.

5    68 at 2–9.)  To summarize, on the evening of January 23, 2021, Officer Khanh Phan responded

6    to multiple 911 calls reporting that the intersection of South 9th Street and Pacific Avenue in

7    downtown Tacoma, Washington had been "overtaken by street racing activity."  (Dkt. No. 53 at

8    2.)  He stated that since the summer of 2020, such street takeovers had become more prevalent,

9    and some racing groups had grown "dramatically more brazen, defiant, and violent toward the

10   police officers who respond."  (Dkt. No. 55-2 at 2.)  Officer Phan approached the intersection in

11   his "fully marked" police patrol vehicle with his emergency lights and air horn activated.  (Dkt.

12   No. 53 at 2.)  He was carrying a "department issued Glock 19 handgun" and had inside his

13   vehicle "a department issued AR-15 rifle."  (*Id.*)  His intent was to disperse the crowd.  (*Id.*)

14           However, as he neared the intersection, the crowd "suddenly and without warning"

15   turned and advanced toward him.  (*Id.* at 3.)  According to Officer Phan, the crowd was "angry,

16   hostile, and violent," and abruptly surrounded his vehicle and "began punching, kicking, and

17   rocking the vehicle" while screaming profanities.  (*Id.*)  People punched his windows so hard he

18   thought they would break, and someone threw a glass bottle full of liquid at the driver's side

19   door, which Officer Phan believed could be a Molotov cocktail.  (*Id.*)  He feared for his own

20   safety, but also feared the crowd would breach his vehicle, overpower him, and gain control of

21   the two weapons inside the vehicle.  (*Id.* at 4.)

22
     _____
23   [2] Pursuant to Local Civil Rule 7(g), "[r]equests to strike material contained in or attached to
     submissions of opposing parties shall not be presented in a separate motion to strike, but shall
24   instead be included in the responsive brief, and will be considered with the underlying motion."

1    Officer Phan attempted to back up to retreat from the scene, but his view was

2    "completely obstructed" by both the people surrounding his vehicle and the smoke from the

3    street racing vehicles. (*Id.*; Dkt. No. 55-2 at 3–4.) When he saw a "small parting of the crowd"

4    in front of him, caused by "male subjects attempt[ing] to climb onto the hood," he made the

5    "split-second" decision to drive forward. (Dkt. Nos. 53 at 4; 55-2 at 4.) He stated that he

6    "slightly accelerated" the car, but as he drove forward, he realized he had hit "one or more of the

7    subjects." (Dkt. No. 55-2 at 4.) After reaching a safe location, he inspected his vehicle and

8    found damage to the driver's door and hood, dents on both sides of the vehicle, and hand and

9    shoe prints all over the vehicle.[3] (Dkt. No. 53 at 5; *see also* Dkt. No. 51 at 27–28.)

10    Plaintiff testified he was waiting for a bus at the intersection of South 9th Street and

11    Pacific Avenue for close to 15 minutes when a group of vehicles arrived and began performing

12    stunts in the street. (Dkt. No. 51 at 119–121.) He began to live stream the action on social

13    media and moved across the street to get a better view. (*Id.* at 124–125.) He denied the scene

14    was rowdy, violent, crazy, or unpredictable. (*Id.* at 128.) He did not know how long he was at

15    the intersection filming (*id.* at 127), but at some point, an "extreme amount of force" hit Plaintiff

16    from behind and caused him to fall. (Dkt. No. 56 at 2; *see also* Dkt. No. 51 at 137–138.) He was

17    "trying to figure [] out" what hit him as he picked himself off the ground, and did not realize

18    police were present until he was "getting off the ground." (Dkt. No. 51 at 129, 138.) Plaintiff

19    testified he did not witness or hear any of the conduct depicted in the videos of the altercation.

20    (*Id.* at 129, 131, 137.) He recalls being "in extreme pain after this incident." (Dkt. No. 56 at 2.)

21

22

23    _____

[3] The record includes two videos of the incident that largely track with Officer Phan's
description of the scene. (*See* Dkt. No. 51 at 2, 146–147.)

24

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT.
NO. 69) - 3

1    The Pierce County Force Investigation Team ("PCFIT") conducted an independent

2   investigation into the incident as is required by law.  (Dkt. No. 51 at 150–161); *see also* Wash.

3   Rev. Code § 10.114.011.  PCFIT concluded there was "overwhelming evidence" of a concerted

4   effort by the crowd to "swarm, impede, block, and damage" Officer Phan's vehicle.  (Dkt. No.

5   51 at 159.)  Further, Officer Phan's belief he was in actual danger was "amply supported by the

6   evidence."  (*Id.*)  PCFIT concluded that given the circumstances, Officer Phan had no

7   "reasonably effective" alternative, and his actions were "reasonable and necessary to protect

8   himself from death or injury and to remove himself from imminent danger."  (*Id.* at 160–161.)

9   Both parties retained expert witnesses to review the PCFIT investigative report and other

10  evidence.  (Dkt. Nos. 51 at 7–107; 55-1 at 2–18.)

11    Plaintiff filed this lawsuit on January 18, 2024, and amended his complaint on January

12  19.  (Dkt. Nos. 1, 3.)  He brings claims of (1) Fourth Amendment excessive force against Officer

13  Phan under 42 U.S.C. § 1983; (2) Fourteenth Amendment excessive force against Officer Phan

14  under 42 U.S.C. § 1983; (3) *Monell* liability against the City of Tacoma under 42 U.S.C. § 1983;

15  (4) negligence against all Defendants; (5) negligent infliction of emotional distress against all

16  Defendants; and (6) intentional infliction of emotional distress (also called outrage) against all

17  Defendants.  (Dkt. No. 3 at 7–10.)  Defendants moved for summary judgment on all claims.

18  (Dkt. No. 50.)  Plaintiff opposed the motion.  (Dkt. No. 54.)  In their reply, Defendants moved to

19  strike Plaintiff's medical records and Plaintiff's expert report.  (Dkt. No. 62.)

20    On September 4, 2025, Judge Peterson issued an R&R, recommending Defendants'

21  motion for summary judgment be granted in full.  (Dkt. No. 68.)  Plaintiff filed objections to the

22  recommendations that: (1) Officer Phan is entitled to qualified immunity on the § 1983 claims

23  under the Fourth and Fourteenth Amendments; (2) the public duty doctrine bars a negligence

24

claim against Officer Phan; (3) Plaintiff's claims for negligent infliction of emotional distress and outrage should be dismissed; and (4) Professor Gilbertson's expert report should be stricken. (Dkt. No. 69 at 1–2.)  Defendants responded in support of the R&R.  (Dkt. No. 70.)

### III    STANDARD OF REVIEW

#### A.  Review of R&Rs

A district court reviews *de novo* "those portions of the report or specified proposed findings or recommendations to which [an] objection is made."  28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition *that has been properly objected to*.") (emphasis added).

Objections to an R&R must be "specific."  Fed. R. Civ. P. 72(b)(2).  "[M]ere incorporat[ion]" of arguments from the underlying motions, without identifying "what portions of the R&R" the objecting party "considers to be incorrect," does not constitute a specific objection, *Amaro v. Ryan*, 2012 WL 12702, at *1 (D. Ariz. Jan. 4, 2012), and therefore does not give rise to a court's obligation to conduct a *de novo* review, *Brandon v. Dep't of Corr.*, 2021 WL 5937685, at *1 (W.D. Wash. Dec. 16, 2021).  "In the absence of a specific objection, the [C]ourt need only satisfy itself that there is no 'clear error' on the face of the record before adopting the magistrate judge's recommendation."  *Venson v. Jackson*, 2019 WL 1531271, at *1 (S.D. Cal. April 8, 2019).

#### B.  Motion for Summary Judgment

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

showing on an essential element of a claim in the case on which the nonmoving party has the

burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986) (nonmoving party must present specific, significant probative evidence, not simply "some

metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

material fact exists if there is sufficient evidence supporting the claimed factual dispute,

requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248–249 (1986); *T.W. Elec. Serv. Inc. v. Pac. Elec. Contractors

Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

        The determination of the existence of a material fact is often a close question. The court

must consider the substantive evidentiary burden that the nonmoving party must meet at trial—in

most civil cases, a preponderance of the evidence. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv.

Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the

nonmoving party only when the facts specifically attested by that party contradict facts

specifically attested by the moving party. *See T.W. Elec. Serv. Inc.,* 809 F.2d at 630–631. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial,

in the hopes that evidence can be developed at trial to support the claim. *Id.* at 630 (relying on

*Anderson*). Conclusory, non-specific statements in affidavits are not sufficient, and "missing

facts" will not be "presumed." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–889 (1990).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**IV     DISCUSSION**

**A.  Motion to Strike Expert Report of Professor Gilbertson**

Judge Peterson recommends granting Defendants' motion to strike Professor Gilbertson's expert report.  (Dkt. No. 64 at 18.)  Plaintiff does not identify any particular aspects of Judge Peterson's analysis he objects to.  Instead, he generally objects to "the RR finding that [the] Gilbertson expert report lacks foundation and must be wholly struck because it is speculative."[4] (Dkt. No. 65 at 14–15.)  *See Brown v. Papa Murphy's Holdings Inc.*, 2021 WL 1574446, at *3 (W.D. Wash. April 22, 2021) ("objections to an R&R are not a vehicle to relitigate the same arguments carefully considered and rejected by the Magistrate Judge").  Because Plaintiff makes no specific objection, the Court must only determine that there is no "clear error" on the face of the record.  *Venson*, 2019 WL 1531271, at *1.  Having reviewed the R&R, Plaintiff's objections, and the underlying record *de novo*, the Court concludes there is no clear error, and adopts Judge Peterson's recommendation.  The expert report of Professor Gilbertson is therefore STRICKEN.

**B.  Motion for Summary Judgment**

Judge Peterson recommends granting Defendants' motion for summary judgment.  (Dkt. No. 64 at 25.)  The Court reviews *de novo* the R&R's analysis of Plaintiff's (1) Fourth Amendment excessive force claim, (2) Fourteenth Amendment excessive force claim, (3) negligence claim against Officer Phan, and (4) outrage and negligent infliction of emotional distress claims.  The Court agrees Defendants are entitled to summary judgment on all claims.

---

[4] Plaintiff also objects to the R&R's observation that "[a]part from a single reference to Officer Phan's Statement . . . Professor Gilbertson's Report constitutes the only source of factual citations in Mr. Williams's substantive opposition."  (Dkt. No. 69 at 15.)  This argument does not relate to whether Judge Peterson correctly struck Professor Gilbertson's expert report and instead appears to attack Judge Peterson's statement that Plaintiff "seeks to create a battle of the experts while abdicating his responsibility to submit sufficient *factual* evidence to establish a triable issue of fact on each element of his claims."  (*See* Dkt. No. 68 at 14) (emphasis in original).

1

### 1.    28 U.S.C. § 1983: Fourth Amendment Excessive Force

2

Judge Peterson concluded Officer Phan was entitled to qualified immunity because he did

3

not seize Plaintiff within the meaning of the Fourth Amendment.  (Dkt. No. 68 at 19–20.)

4

Plaintiff proposes that the analysis should first look at whether the amount of force used by

5

Officer Phan was objectively reasonable under the circumstances and argues in this case it was

6

not.  (Dkt. No. 69 at 3–4.)

7

The Supreme Court has held that the "operative question" in a Fourth Amendment

8

excessive force case is whether "the totality of the circumstances justifie[s] a particular sort of

9

search or seizure."  *Cnty. of L.A., Cal. v. Mendez*, 581 U.S. 420, 427–428 (2017) (alteration in

10

original) (citation omitted).  If an officer carries out a seizure that is reasonable, accounting for

11

all relevant circumstances, "there is no valid excessive force claim."  *Id*. at 428.  Thus, whether

12

Plaintiff's Fourth Amendment claim can survive summary judgment depends on whether he was

13

seized.

14

The "application of physical force to the body of a person with intent to restrain is a

15

seizure even if the person does not submit and is not subdued."  *Torres v. Madrid*, 592 U.S. 306,

16

325 (2021).  However, not every instance of physical contact between an officer and a member

17

of the public becomes a Fourth Amendment seizure.  *Id.* at 317.  "A seizure requires the use of

18

force *with intent to restrain*."  *Id.*; *see also Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989) (a

19

Fourth Amendment seizure occurs when there is a "governmental termination of freedom of

20

movement *through means intentionally applied*").  Force "intentionally applied for some other

21

purpose" also does not qualify as a seizure; "we consider only force used to apprehend."  *Torres*,

22

592 U.S. at 317.

23

24

1    Judge Peterson concluded Officer Phan did not act with the intent to restrain Plaintiff,

2   and therefore there was no seizure under the Fourth Amendment.  (Dkt. No. 68 at 19–20.)  In his

3   objections to the R&R, Plaintiff argues that because he was struck by Officer Phan's vehicle, he

4   was seized, regardless of the officer's subjective intent.  (Dkt. No. 69 at 5–7.)  This is true—the

5   appropriate inquiry is "whether the challenged conduct *objectively* manifests an intent to

6   restrain," independent of the officer's "subjective motivations."  *Torres*, 592 U.S. at 317; *see*

7   *also Puente v. City of Phx.*, 123 F.4th 1035, 1052 (9th Cir. 2024) ("the requisite intent to restrain

8   is present only when the force applied objectively aims at detaining or confining the person").

9   But the evidence indicates Officer Phan's conduct does not "objectively manifest an intent to

10   restrain" Plaintiff or anyone else, and instead shows an intent to escape the crowd.[5]  The record

11   shows he was surrounded from all sides and his lights and air horn had so far been ineffective at

12   dispersing anyone.  (Dkt. Nos. 51 at 160; 55-2 at 3.)  He was concerned about individuals

13   breaching his vehicle and accessing the weapons inside.  (Dkt. No. 53 at 4.)  Someone threw a

14   glass bottle of liquid he believed to be a Molotov cocktail at his window; he was aware of recent

15   instances where Molotov cocktails were used against police, and he believed the crowd was

16   going to set his vehicle on fire.  (*Id.* at 3; *see also* Dkt. Nos. 51 at 159; 55-2 at 3.)  He stated his

17   "only option" to escape to safety was to go "forward through the mob."  (*Id.* at 3–4.)  Taken as a

18   whole, the record shows that although Officer Phan intentionally applied force, he did so for

19

20   [5] The Ninth Circuit's decision in *Puente* is useful here.  In that case, the court concluded that
    chemical irritants used to disperse a crowd (which included the plaintiffs) were objectively
21   aimed at moving the protesters out of the area, but the conduct did not constitute a seizure.  123
    F.4th at 1052–1053.  This is because the plaintiffs produced no evidence the chemicals were
22   deployed with the objective intent to restrain, for example, "by targeting an immobilizing level
    of force at *selected individuals*."  *Id.* at 1053 (emphasis added).  Similarly, there is no evidence
23   here that Officer Phan's conduct was directed at Plaintiff or anyone else.  Plaintiff testified he
    did not even know there were officers in the area until he was on the ground, nor did he see the
24   flashing lights or hear the air horn.  (Dkt. No. 51 at 129, 131, 137–138.)

1   "some other purpose"—namely, to flee the crowd.  *Torres*, 592 U.S. at 317.  Plaintiff provides

2   no evidence to the contrary.

3         Citing *Torres*, Plaintiff argues that the "amount of force remains pertinent in assessing

4   the objective intent to restrain."  (Dkt. No. 69 at 7 (citing *Torres*, 592 U.S. at 317).)  Therefore,

5   according to Plaintiff, because Officer Phan did more than a "tap on the shoulder" (i.e., he

6   "rammed his squad car into Plaintiff"), the evidence would allow a jury to find an objective

7   intent to strike Plaintiff.  (*Id.*)  But while the amount of force may be "pertinent," the inquiry

8   remains whether the challenged conduct, assessed in context, demonstrated an objective intent to

9   restrain, because only force used to apprehend is considered.  Here, the evidence shows Officer

10  Phan was secured in his patrol vehicle, which was surrounded by people yelling profanities and

11  kicking and hitting the vehicle.  (Dkt. Nos. 51 at 146–147, 152–154; 55-2 at 3.)  He stated he was

12  unable to back up because of the crowd surrounding him, and he did not want the crowd to

13  "breach the interior of my vehicle, overpower me, and gain control of the weapons inside – using

14  my weapons against me or the crowd."  (Dkt. No.  53 at 4; *see also* Dkt. No. 55-2 at 3.)

15  Defendants' expert noted the only thing separating Officer Phan from the crowd was the patrol

16  vehicle itself.  (Dkt. No. 51 at 46.)  Though the amount of force used by Officer Phan is one of

17  many relevant factors, when looked at in context, the only conclusion is that the force Officer

18  Phan used was not to apprehend Plaintiff or any other individual at the scene.

19        Because she concluded there was no seizure, Judge Peterson did not reach the question of

20  whether Officer Phan's actions were objectively reasonable within the circumstances.[6]  (Dkt. No.

21

22  _____

23  [6] When a police officer's "application of force" involves a seizure of a person, courts must then
    evaluate "whether that force was excessive under the Fourth Amendment's '"objective
    reasonableness"' standard."  *Puente*, 123 F.4th at 1050 (citing *Graham v. Connor*, 490 U.S. 386,
24  388 (1989)).

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 69) - 10

1    68 at 20 n.11.)  Plaintiff objects to the threshold inquiry and argues that Judge Peterson should

2    have applied the objectively reasonable officer test from the outset.  (Dkt. No. 69 at 3–4.)  The

3    Court agrees with Judge Peterson's conclusion that because there was no seizure, there is no

4    need to analyze whether Officer Phan's actions were reasonable.  *See Lum v. City of Grants*

5    *Pass,* 2011 WL 915385, *13–14 (D. Or. Jan. 6), *adopted by* 2011 WL 867691 (D. Or. Mar. 10,

6    2011), *aff'd* 484 Fed. Appx. 89 (9th Cir. 2012) (citation omitted) (noting that whether there is a

7    seizure within the meaning of the Fourth Amendment is a "threshold" matter for both

8    unreasonable seizure and excessive force claims).  Accordingly, the Court concurs that Officer

9    Phan is entitled to qualified immunity on Plaintiff's Fourth Amendment excessive force claim.

10   Plaintiff's Fourth Amendment claim is DISMISSED.

11            **2.    28 U.S.C. § 1983: Fourteenth Amendment Excessive Force[7]**

12           Judge Peterson concluded the "purpose to harm" test applies, and Plaintiff failed to

13   satisfy the requisite standard.  (Dkt. No. 68 at 20–21.)  Plaintiff objects to the use of the "purpose

14   to harm" test and argues the "deliberate indifference" standard applies instead.  (Dkt. No. 69 at

15   10.)

16           Under the Fourteenth Amendment due process clause, liability is found only if the

17   plaintiff can show that police conduct "shocks the conscience."  *Cnty. of Sacramento v. Lewis,*

18   523 U.S. 833, 847 (1998).  There are two tests used to decide whether officers' conduct shocks

19   the conscience, and which test applies turns on whether the officers had time to deliberate their

20   conduct.  *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022).  The "deliberate

21

22   ─────────────────────────
     [7] Where no seizure has occurred in an excessive force claim, the claim falls outside the Fourth
23   Amendment and its reasonableness standard, and instead comes within the ambit of the
     substantive due process component of the Fourteenth Amendment.  *Cnty. of Sacramento v.*
24   *Lewis*, 523 U.S. 833, 844, 846–847 (1998).

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT.
NO. 69) - 11

indifference" test applies if the situation at issue "evolve[d] in a time frame that permits the officer to deliberate before acting." *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008). Deliberation is not possible if the officers "encounter[ed] fast paced circumstances presenting competing public safety obligations." *Id.* at 1139. Deliberation in this context "should not be interpreted in the narrow, technical sense." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

On the other hand, the "purpose to harm" test applies if the situation at issue "escalate[d] so quickly that the officer [had to] make a snap judgment." *Porter*, 546 F.3d at 1137. This test "requires a more demanding showing that [the officer] acted with *a purpose to harm* [the plaintiff] for reasons unrelated to legitimate law enforcement objectives." *Id.* Legitimate objectives include, among others, "arrest, self-protection, and protection of the public." *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018). Illegitimate objectives include "when the officer 'had any ulterior motives for using force against' the suspect, such as 'to bully a suspect or get even,' or when an officer uses force against a clearly harmless or subdued suspect." *Id.* (citations omitted).

Here, the undisputed evidence establishes that Officer Phan faced a quickly evolving situation in deciding to flee the crowd. Officer Phan was surrounded by an "angry, hostile, and violent" crowd of people who were "punching, kicking, and rocking [his vehicle] while screaming" profanities at him. (Dkt No. 53 at 3.) He was unable to see out of his rearview mirror because the amount of people and tire smoke obstructed his view. (*Id.* at 4.) He feared the crowd would breach his vehicle, overpower him, and gain control of the two weapons inside his vehicle, using the weapons either against him or the crowd. (*Id.*) After people began climbing on the hood of his vehicle, Officer Phan saw a "small parting" in the crowd and made

1    the "split-second" decision to drive forward.  (*Id.*)  The R&R states the "Main Video" of the

2    incident lasted just 44 seconds (Dkt. No. 68 at 16), and in his response to the summary judgment

3    motion, Plaintiff described the video as showing that "[Officer] Phan drove in reverse for at least

4    five seconds, he paused for four seconds, and shifted into drive."  (Dkt. No. 54 at 6; *see also* Dkt.

5    No. 56 at 3, 5).  In this short duration of time, deliberation was not practical.  *See Porter*, 546

6    F.3d at 1139 (finding actual deliberation not practical where a five-minute altercation between

7    officers and the victim evolved quickly and forced the officers to make "repeated split-second

8    decisions"); *see also Chavez v. Las Vegas Metro. Police Dep't*, 648 Fed. App'x 657, 658 (9th

9    Cir. 2016) ("The district court correctly held that because the officers encountered a 'rapidly

10    escalating' situation that quickly evolved within minutes, Chavez was required to show that the

11    officers acted with a 'purpose to harm' unrelated to legitimate law enforcement objectives.");

12    *Shirar v. Guerrero*, 673 Fed. App'x 673, 675 (9th Cir. 2016) ("The purpose-to-harm standard

13    applies here because only a minute elapsed between [the defendant's] call for an ambulance for

14    [the plaintiff] and his second radio call that shots had been fired."); *Atkinson v. Cnty. of Tulare*,

15    790 F. Supp. 2d 1188, 1208 (E.D. Cal. 2011) (applying purpose to harm standard where "the

16    entire incident lasted only a few minutes").  Because the evidence indicates Officer Phan acted

17    with the "legitimate objective" of protecting himself and leaving the escalating situation, the

18    Court finds that the "purpose to harm" standard is appropriate in this case.  *Foster*, 908 F.3d at

19    1211.

20        Plaintiff objects that even under this standard, his claim should survive summary

21    judgment because Officer Phan "engaged in a collective form of punishment because he was

22    frustrated, angry, overworked, and mad that he could not clear the intersection."  (Dkt. No. 69 at

23

24

10–11.)  However, Plaintiff has alleged no facts to support this assertion.  Furthermore, video

footage of the incident contradicts this account.

Accordingly, the Court finds and concludes, just as Judge Peterson did, that Officer Phan

is entitled to qualified immunity and Plaintiff's Fourteenth Amendment claim of excessive force

should be DISMISSED on summary judgment.

### 3.    Negligence

Judge Peterson concluded that the public duty doctrine barred Plaintiff's negligence

claim against Officer Phan.[8]  (Dkt. No. 68 at 24.)

Governmental entities "shall be liable for damages arising out of their tortious

conduct . . . to the same extent as if they were a private person or corporation."  Wash. Rev.

Code § 4.96.010(1).  To be held liable, a governmental entity must engage in tortious conduct

that is "'analogous, in some degree at least, to the chargeable misconduct and liability of a

private person or corporation.'"  *Munich v. Skagit Emergency Commc'ns Ctr.*, 288 P.3d 328, 336

(Wash. 2012) (Chambers, J., concurring) (quoting *Evangelical United Brethren Church v. State*,

407 P.2d 440 (Wash. 1965)).[9]  The requirement of analogous conduct reduces the scope of

liability because governments have a variety of duties mandated by statute or ordinance that

private individuals do not.  For example, private entities are not required by law to issue permits,

conduct inspections, prepare official reports, or maintain the peace, and therefore incur no

---

[8] Defendants argued in their motion for summary judgment that Plaintiff's negligence claim fails because "the foundation of his claim is that Officer Pham committed an *intentional* tort."  (Dkt. No. 50 at 28.)  However, this argument is foreclosed by *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608, 613 (Wash. 2019) (en banc), which held that a valid intentional tort claim for excessive force "has no bearing on the viability" of a negligence claim.

[9] In several subsequent decisions, the Washington Supreme Court has recognized Justice Chambers's concurrence in *Munich*, which expressed the views of five justices, as precedential. *See Norg v. City of Seattle*, 522 P.3d 580, 584 (Wash. 2023) (en banc).

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 69) - 14

liability in connection with these types of activities. *Munich*, 288 P.3d at 337 (Chambers, J.,

concurring). These special governmental obligations reflect an obligation owed to the public as

a whole and are not actionable duties within the meaning of tort law. *See id.* Thus, to establish a

duty against a governmental entity, "a plaintiff must show that the duty breached was owed to an

individual and was not merely a general obligation owed to the public." *Beltran-Serrano v. City

of Tacoma*, 442 P.3d 608, 614 (Wash. 2019) (en banc). There are four exceptions to the public

duty doctrine in which the governmental agency acquires a special duty of care owed to a

particular plaintiff: (1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a

special relationship. *Munich*, 228 P.3d at 332.

> Here, Officer Phan was responding to 911 calls related to an intersection overtaken by
> street racing activity (*see generally* Dkt. No. 53), which is a criminal offense, *see* Wash. Rev.
> Code § 46.61.530. Enforcing compliance with state law is an exclusive governmental function.
> *See Fabre v. Town of Ruston*, 321 P.3d 1208, 1213 (Wash. Ct. App. 2014) ("Governmental
> functions tend to involve activities ensuring compliance with state law; issuing permits; or
> performing activities for the public health, safety, and welfare."). Thus, because Officer Phan
> was performing a governmental function when the incident occurred, the public duty doctrine
> applies.

> Plaintiff argues the R&R "overlooks" *Washburn v. City of Federal Way*, 310 P.3d 1275
> (Wash. 2013) (en banc), and mistakenly relies upon *Zorchenko v. City of Federal Way*, 549 P.3d
> 743 (Wash. Ct. App. 2024) in the analysis of the public duty doctrine.[10] (Dkt. No. 69 at 11–12.)
> In *Washburn*, a Federal Way police officer served an antiharassment order on a woman's partner

---

[10] Plaintiff asks the Court to adopt *Washburn*'s analysis but, in his objections, quotes a separate
United States District Court case. (Dkt. No. 69 at 12.)

1    at her request under former Washington Revised Code § 10.14.100(2) (2002).  310 P.3d at 1280,

2    1288.  The woman notified the police of her partner's violent nature and the need for a Korean

3    interpreter.  *Id.* at 1280.  When the officer served the order, he did not use an interpreter, saw the

4    woman inside the home with her partner, did not ask about her safety, handed the partner the

5    antiharassment order, and left.  *Id.*  The partner stabbed and killed the woman later that same

6    day.  *Id.*  In its decision, the court analyzed former Washington Revised Code § 10.14.010

7    (1987), in which the legislature declared that "the prevention of [personal] harassment is an

8    important government objective" and required municipal officers to serve the order.  *Id.* at 1288.

9    The court concluded the statute satisfied the requirements of the legislative intent exception to

10   the public duty doctrine because it described a particular class of persons, evidenced a legislative

11   intent to protect that class, and provided a means for achieving that goal.  *Id.*  The court, relying

12   on RESTATEMENT (SECOND) OF TORTS § 302B,[11] also held that the officer owed the woman a

13   common law duty to act reasonably when serving the antiharassment order.  *Id.* at 1289–1290.

14           To the extent Plaintiff is arguing the legislative intent exception applies, the only statute[12]

15   Plaintiff cites to support his negligence argument is Washington Revised Code § 46.61.264,

16   which requires that upon the immediate approach of an emergency vehicle utilizing its lights and

17   sirens or a police vehicle, "every pedestrian and every personal delivery device shall yield the

18   right-of-way to the authorized emergency vehicle."  (*See* Dkt. No. 69 at 12.)  Subsection (2)

19

20   [11] Restatement § 302B provides that "an act or an omission may be negligent if the actor realizes
     or should realize that it involves an unreasonable risk of harm to another through the conduct of

21   the other or a third person which is intended to cause harm, even though such conduct is
     criminal."

22   [12] Plaintiff also cites Washington Revised Code § 46.61.235, which requires vehicles to stop to
     allow a pedestrian to cross the roadway within an unmarked or marked crosswalk when the

23   pedestrian is upon or within one lane of the half of the roadway.  (Dkt. No. 69 at 12–13.)
     Plaintiff does not allege that he was attempting to cross the street when the incident occurred.

24   (*See generally* Dkt. No. 51 at 124–131.)

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT.
NO. 69) - 16

states, "This section shall not relieve the driver of an authorized emergency vehicle from the duty to drive with due regard for the safety of all persons using the highway nor from the duty to exercise due care to avoid colliding with any pedestrian or any personal delivery device." Wash. Rev. Code § 46.61.264(2). Unlike the statute discussed in *Washburn*, which imposed on police officers a duty to serve antiharassment orders in a nonnegligent manner, § 46.61.264 does not show an intent to protect a specific class of individuals as is required for the legislative intent exception.

Plaintiff further argues that the R&R erred in relying on *Zorchenko* because the case "did not involve the direct malfeasance of the officer in the same way as *Washburn*, *Norg*, [and] *Beltran*." (Dkt. No. 69 at 13.) What Plaintiff fails to recognize is that each of those cases involved an individualized relationship between the plaintiff and the defendant such that courts concluded the defendants owed the plaintiffs a duty. In *Washburn*, the court held that because of legislative intent and the common law duty to guard against danger created by one's own actions, the city owed the woman both a statutory and common law duty to act reasonably in serving the antiharassment order. 310 P.3d at 1291. In *Norg*, the plaintiffs called 911, explicitly requested emergency medical assistance, confirmed their address multiple times, and were repeatedly assured by the dispatcher that medical aid was on the way. 522 P.3d at 587. The court acknowledged the argument that the city established "a direct and particularized relationship" with the plaintiff, and concluded the city owed the plaintiff, individually, a common law duty of reasonable care upon responding to the plaintiff's call for emergency medical assistance. *Id.* at 588–589. As such, the public duty doctrine did not apply in *Norg* and there was no need to consider any of the exceptions. *Id*. at 589. Finally, in *Beltran-Serrano*, a Tacoma Police Department officer shot a mentally ill homeless man after the officer approached him about

1  panhandling in the city. 442 P.3d at 610. When the man, who did not understand English, ran

2  from the officer, she shot him multiple times. *Id.* The court concluded that the common law

3  duty to refrain from causing foreseeable harm in interactions with others applied in the context of

4  law enforcement and "encompasses the duty to refrain from directly causing harm to another

5  through affirmative acts of misfeasance." *Id.* at 614. The court noted that the plaintiff's claims

6  arose out of the officer's "direct interactions with him, not the breach of a generalized public

7  duty." *Id.* at 615. Though the court concluded that the city owed the man a duty to exercise

8  reasonable care, the court acknowledged that "[r]ecognizing such a duty does not open the door

9  to potential liability for a city's statutorily imposed obligation to provide police services, enforce

10 the law, and keep the peace. These statutory duties have always been, and will continue to be,

11 nonactionable duties owed to the public at large." *Id.*

12      Here, Officer Phan did not have a direct or affirmative interaction with Plaintiff. Thus,

13 unlike the police departments in *Washburn*, *Norg*, and *Beltran-Serrano*, Officer Phan had no

14 individual duty to Plaintiff for which he was required to exercise reasonable care. Plaintiff

15 effectively seeks to impose a broad duty to act, without characterizing it as such.

16      Accordingly, the Court finds and concludes, just as Judge Peterson did, that Plaintiff's

17 negligence claim against Officer Phan should be DISMISSED on summary judgment.

18                          **4.    Outrage**

19      Judge Peterson determined Plaintiff could not prevail on his outrage claim because the

20 record was insufficient to establish more than "general evidence of emotional distress." (Dkt.

21 No. 68 at 27.)

22      The intentional tort of outrage requires proof of three elements: "(1) extreme and

23 outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual

24

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT. NO. 69) - 18

result to plaintiff of severe emotional distress." *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003) (en banc). Courts may make the initial determination of whether there is a factual question about "whether the conduct was sufficiently extreme to result in liability." *Lyons v. U.S. Bank Nat. Ass'n*, 336 P.3d 1142, 1151 (Wash. 2014) (en banc) (citation omitted). The plaintiff must provide evidence of severe emotional distress as a result of the defendant's conduct, and it must be more than "'transient and trivial emotional distress.'" *Sutton v. Tacoma Sch. Dist. No. 10*, 324 P.3d 763, 779 (Wash. Ct. App. 2014) (quoting *Kloepfel*, 66 P.3d at 636).

Judge Peterson determined that Plaintiff's outrage claim could not survive summary judgment because he did not identify specific medical records to support his claim, and regardless, his medical records only showed "general evidence of emotional distress." (Dkt. No. 68 at 27.) Plaintiff objects, arguing that his diagnosis of post-traumatic stress disorder ("PTSD") two years after the incident demonstrated his emotional distress was more than "transient." (Dkt. No. 69 at 14.)

Plaintiff's medical records do generally identify that he had a PTSD diagnosis in March 2023. (Dkt. No. 56-4 at 593–594.) Plaintiff's psych evaluation explains that Plaintiff was "hit by [a] police cruiser during Floyd riots and hospitalized in 01/2021." (Dkt. No. 56-4 at 593.) Plaintiff had "another run-in with police" in April 2021, which caused "severe emotional trauma." (*Id.*) The evaluation states that Plaintiff now suffers from anxiety and panic symptoms, which are triggered by sirens and police lights. (*Id.*) Plaintiff argues that because these records were signed more than two years after the incident, his symptoms are more than "transient." (Dkt. No. 69 at 14.) But separate from the question of transience, neither these documents, nor any other evidence in the record, identify a causal connection between Officer Phan's conduct and Plaintiff's PTSD diagnosis as is required under Washington law. *See Spicer v. Patnode*, 443

1   P.3d 801, 809 (Wash. Ct. App. 2019) ("plaintiff must show that he or she actually suffered

2   emotional distress *as a result of the defendant's conduct*") (emphasis added).  Plaintiff's outrage

3   claim should therefore be DISMISSED.

4                    **5.    Negligent Infliction of Emotional Distress**

5          In support of her recommendation to grant summary judgment to Defendants, Judge

6   Peterson cited to Plaintiff's failure to point to a "single objective symptom" in his medical

7   records that proximately resulted from Officer Phan's conduct.  (Dkt. No. 68 at 28.)

8          To prevail on a claim of negligent infliction of emotional distress, a plaintiff must prove

9   the elements of negligence (duty, breach, proximate cause, and damages), as well as "objective

10  symptomatology." *Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 205 (Wash. 2014) (en banc).

11         Plaintiff's objection to the R&R comes down to one sentence: "Certainly the Plaintiff's

12  declaration, the argument in his response brief and the medical records (including DSM

13  diagnosis of PTSD) support[s] the tort of . . . negligent infliction of emotional distress."  (Dkt.

14  No. 69 at 14.)  This is exactly the sort of vague objection that does not require this Court to

15  review the record *de novo*.  Having found no clear error, *see Venson*, 2019 WL 1531271, at *1,

16  the Court adopts Judge Peterson's recommendation that Plaintiff's claim for negligent infliction

17  of emotional distress be DISMISSED.[13]

18         In sum, the Court reaches the same conclusion reached by Judge Peterson in the R&R

19  and Defendants' motion for summary judgment is GRANTED.

20

21

22  _____

23  [13] Notwithstanding the lack of a specific objection from Plaintiff on this claim, because the
    elements of negligence are embedded in the elements of negligent infliction of emotional
    distress, Plaintiff's inability to prevail on a negligence claim against Officer Phan provides a
24  separate basis for dismissal.  *See* Section IV(B)(3) *supra*.

ORDER ON REPORT AND RECOMMENDATION (DKT. NO. 68) AND PLAINTIFF'S OBJECTIONS (DKT.
NO. 69) - 20

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## V    CONCLUSION

The Court has reviewed Plaintiff's objections (Dkt. No. 69), Judge Peterson's R&R (Dkt. No. 68), Defendants' motion for summary judgment and motion to strike (Dkt. Nos. 50, 62), and the entire record *de novo*.  The Court ADOPTS in full Judge Peterson's R&R and ORDERS:

1. Defendants' motion to strike Plaintiff's expert report (Dkt. No. 62) is GRANTED;

2. Defendants' motion to strike Plaintiff's medical records (Dkt. No. 62) is DENIED as moot; and

3. Defendants' motion for summary judgment (Dkt. No. 50) is GRANTED, and the action is DISMISSED with prejudice.

The Clerk is directed to close the case and enter judgment.


Dated this 2nd day of December 2025.


David G. Estudillo
United States District Judge